## KINSEY *v.* GRIMES.

A bill in equity alleging a certain contract, which is denied by the answer, is not sustained by proof of a different contract.

If a refusal of instructions to the jury would be right under any supposable state of facts, it cannot be assigned for error.

An issue of fact having been formed on bill and answer in equity, a jury was called to try it, and the answer read in evidence. *Held*, that the jury might find for the complainant on the testimony of a single disinterested witness.

ERROR to the *Wayne* Circuit Court.

DEWEY, J.—*Kinsey* filed a bill in equity against *Grimes* to enforce a mechanic's lien. The bill, among other things, alleges that *Grimes* purchased of *Kinsey* 17,600 bricks, with which he erected a dwelling-house; that the bricks were bought on a credit of six months, at the price of four dollars per thousand, amounting to 70 dollars and 40 cents, in which sum *Grimes* was indebted to *Kinsey*. *Grimes*, in his answer, denies the purchase of the bricks of *Kinsey*, and all indebtedness to him. There was a general replication. A jury was called to try the issue formed by the bill and answer, with respect to the purchase of the bricks, and *Grimes'* indebtedness to *Kinsey* for them. Verdict for the defendant; and the bill dismissed.

The evidence is not spread upon the record; but it appears by a bill of exceptions, that the defence set up by *Grimes* was, that the bricks which he used in building his house were purchased of *Kinsey* by one *Thorp*, who was indebted to *Grimes*. We are further informed, that there was

evidence tending to prove that *Kinsey* would not trust *Thorp* for the bricks, unless *Grimes* would be his surety.

*Kinsey* requested the Court to instruct the jury, that if *Grimes* took the bricks from *Kinsey's* kiln, without informing him that he had consented to be surety for *Thorp*, he was himself responsible for their value, and could be held liable in this action. The Court refused to give the charge. We think the refusal was correct. The contract alleged in the bill is, that *Grimes* purchased the bricks of *Kinsey* at a stipulated price, and on a certain credit. If *Grimes* became liable to *Kinsey* by contract for taking the bricks, under the circumstances supposed in the instruction asked for, it was on an implied promise to pay for them, on demand, at their reasonable value. Proof of such a promise would not support the bill, which alleged a different contract. It would, therefore, have been improper for the Court to have charged the jury, that *Grimes* could be held liable in this action on the implied promise.

*Kinsey* also asked the Court to instruct the jury, that the admissions of the defendant were legal evidence in favour of the plaintiff, the record showing that there was testimony to which the instruction, if given, would have applied. The Court refused so to charge. If, under any supposable state of facts, the refusal of the Court to instruct as asked could be justified, we are bound to presume that those facts existed. If the admissions alluded to in the rejected charge were made to avoid litigation, they were not legal evidence, and the refusal was correct.

Among the instructions given by the Court was the following : That to entitle the plaintiff to a verdict, he must have established the claim alleged in the bill by two witnesses, or by one witness and *strong* corroborating circumstances.

It is usual in equity practice, where a fact alleged in the bill is plainly denied by the answer, and supported but by one witness and circumstances of corroboration, to send the issue to be tried at law ; and to direct that the answer be read in evidence to the jury. And it seems that, without such direction, the answer would not be evidence, for it is contrary to the rules governing Courts of common law, to suffer a party to make evidence for himself. *Glynn* v. *The*

Nov. Term, 1844.

KINSEY
v.
GRIMES.

*Bank of England,* 2 Ves. 38.—Gresley's Eq. Ev. 156.—*Arnot* v. *Biscoe,* 1 Ves. 95.—*Ibbottson* v. *Rhodes,* 2 Vern. 554. The statute on which this bill is founded provides that the Court, on the application of either party, may direct an issue to be made, and a jury to be called to try it, as in other cases at law. R. S. 1838, p. 412. But there is no provision that the answer of the defendant shall go to the jury, or what shall be its effect on the trial. No question, however, arises in this cause as to the admissibility of the answer. It went to the jury without objection; and the only inquiry is, what is to be its effect? In a Court of equity, the answer, distinctly denying a fact alleged in the bill, stands on the footing of the testimony of a disinterested witness, and, when it is opposed to single evidence only on the part of the plaintiff, must prevail. No decree can be given against it. But when the answer is thus considered, it is going too far to say that to weigh it down, the testimony of one witness and *strong* corroborating circumstances are at least necessary; slight corroboration is sometimes sufficient. Gresley's Eq. Ev. 4. But the answer has not the same weight before a jury trying an issue at law, that it has before the chancellor. The jury have the right to view it with the suspicion which attends the testimony of an interested witness, and to give it such credit as they may think it deserves. *Glynn* v. *The Bank of England, supra.*—Gresley's Eq. Ev. 157. It follows from this principle, that the jury, if in their opinion the uncorroborated testimony of a single disinterested witness is entitled to greater weight and credibility than the answer, may find a verdict against the latter. The charge of the Court to the contrary was incorrect.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. S. Newman,* for the plaintiff.

*C. H. Test,* for the defendant.